| **Matter of Melnick** |
|:---:|
| 2011 NY Slip Op 34359(U) |
| October 28, 2011 |
| Surrogate's Court, New York County |
| Docket Number: File No. 2010-1814 |
| Judge: Nora S. Anderson |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SURROGATE'S COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

In the Matter of the Probate of the Will
of

ROSALIN E. MELNICK,

Deceased.

------------------------------------------------------------x

New York County Surrogate's Co──
DATA ENTRY
Date: October 28, 2011

File No. 2010-1814

ANDERSON, S.

Incident to this contested probate proceeding in the estate of Rosalin D. Melnick, the preliminary executors move to dismiss objections filed by decedent's son, Steven Melnick, on the ground that he surrendered his right to object to probate under a release executed prior to decedent's death (CPLR § 3211[5])[1]. Steven has filed papers in opposition and cross-moved for sanctions.

Decedent died on April 27, 2010, at the age of 98, survived by a daughter, Joan Miller, and Steven. Decedent left an estate valued at approximately $2.5 million. Joan and her husband, Ken Miller, petitioned for probate of an instrument dated December 2, 2004, under which they are designated as executors, and they were issued preliminary letters on June 3, 2010.

Under the propounded instrument, Joan receives all of the distributable estate except for a pre-residuary legacy of $35,000 to Steven. Joan also benefits from decedent's testamentary exercise of her power of appointment over the remainder of a trust established under the will of decedent's husband, who died in 1993. As the takers in default of exercise of the power, Steven's three children and former wife were cited in this proceeding, along with Steven, and

---

[1] For the record, it is noted that the motion is styled as one for summary judgment.

they too have filed objections. The present motion, however, relates only to the objections filed by Steven.

In addition to its dispositive and administrative provisions, the propounded instrument contains a three-paragraph statement describing decedent's reasons for giving Steven a very limited interest in her estate and for divesting his children and former wife of their remainder interests under her husband's trust. According to the statement, Steven had long ago become estranged from decedent and her husband, as well as from his own children and wife; to compensate Steven's family for the support that he had failed to give them, decedent and her husband had provided his family with generous financial assistance over the course of many years; Steven's family had ultimately betrayed decedent with unreasonable demands and suspicions concerning the handling of her husband's estate; and decedent had therefore decided to direct her generosity toward Joan alone, but for the modest legacy that she bequeathed to Steven as compensation for the fact that her husband had left him nothing.

At issue on these cross-motions is a notarized writing entitled, "RECEIPT AND RELEASE," signed by Steven on October 19, 2009 (the "Release"), *i.e.*, almost four years after decedent had executed the propounded instrument. On that same date, Steven had received from decedent $585 as the last of a series of 17 consecutive monthly payments, totaling $35,000, that she or her representatives had given to or for him since February 2008.[2] The Release reads as follows:

> "... I, STEVEN MELNICK, ... hereby acknowledge receipt of the aggregate sum of Thirty Five Thousand ($35,000) Dollars from my

---

[2] By earlier notarized writings, Steven had acknowledged each such payment as an "advance" against his "bequest".

2

mother Rosalin Melnick, at my request, as an advancement in full of the total bequest which I understand she has provided for me in her will dated December 2, 2004. I further understand that I will be furnished with a copy of my mother's will after her demise. If in fact my mother's will limits my total inheritance to $35,000, then I further acknowledge ( i ) that this advancement completes the full amount of said bequest, and constitutes payment and satisfaction of the entire interest I will have in my mother's estate after her demise, and (ii) that in consideration of such payment, I hereby, for myself and my heirs, executors and administrators, remise, release and forever discharge my mother, Rosalin Melnick, and her heirs, executors and administrators (the "Releasees") of and from all claims and demands which I or my heirs, executors and administrators now have or hereafter may have against the Releasees, or any of them, by reason of any acts or matters done or omitted to be done in connection with my said bequest.

The undersigned does hereby waive the issue and service of citation in any proceeding that may hereafter be brought to render and settle the account of any executor of my mothers' will, and the undersigned hereby appears in person therein and consents to the entry of an order or decree settling any such account as filed, without notice to the undersigned.

These terms constitute the sole basis for the preliminary executors' contention that Steven has released, among other things, his right to object to probate as a distributee. That being the case, this motion need not detain us long.

It is well established that, when an instrument is expressed in terms that clearly and unequivocally give up a right or discharge a claim (such as a waiver or release or renunciation), "effect must be given to the intent of the parties as indicated by the language employed" (*Metz v Metz*, 175 AD2d 938, 939). As a companion principle, in determining the extent to which Steven surrendered his rights against decedent's estate, the court must read the language of the instrument he executed without resort to extrinsic evidence unless that language is ambiguous as a matter of law (*Wells v Shearson-Lehman/American Express*, 72 NY2d 11, 19).

It is observed that Steven's execution of the Release was his part of a bargain — the quid

3

[* 3]

pro quo for his having received a total of $35,000 in advances against his bequest (or, specifically, $585 on the date of the Receipt) without awaiting the death of his nonegenarian mother. Clearly, the Receipt had been solicited of him to protect decedent's estate in the event that Steven ultimately claimed a right to a bequest under decedent's will without reduction for the $35,000 in advances, or claimed some right to object in an executor's accounting. Indeed, the Release's express terms advert only to (1) the fact of the advances and the reductions accordingly of Steven's claim against the estate as legatee and (2) Steven's surrender of his rights against his mother's estate "in connection with [his] bequest," including his waiver of citation and consent in any accounting by any executor."

Such express terms clearly were premised on certain suppositions: that eventually a will of decedent would be admitted to probate; that such will would contain a legacy to Steven; and (3) that Steven would survive decedent and his bequest would therefore not lapse.[3]
As indicated at the outset, however, the preliminary executors argue that the terms of the Release mean more than they expressly say. According to them, such language implicitly supports the proposition that Stephen also surrendered his right to object to probate as a distributee. To read such surrender into the Release, however, the court would have to ignore at least two of the gauges by which a release is to be measured under the precedents.

The first such gauge is the extent of the consideration received for the release (the narrower the consideration for which it is given, the less plausible a broad reading of the release (*see Blue Seal Sound Devices, Inc. v Radio Receptor Co.*, 247 AD 643 [1st Dept 1936]). In this

---

[3]The bequest to Steven was expressly made to lapse in the event he predeceased. In other words, the terms of the bequest assured that the bequest would not devolve upon Steven's children.

4

case, to rule for the preliminary executors, the court would have to conclude that Steven relinquished his interest as a claimant to one-half of a multi-million-dollar estate for the sake of getting $35,000 (or, rather, as a practical matter, $585) sooner rather than later.

The second such gauge is whether the language at issue was drafted by the party arguing for a broader or narrower reading of the release. It is well settled that any ambiguity in the language of an instrument must be resolved against the party represented by the drafter (*see Moran v Standard Oil Co. of New York*, 211 NY 187, 196). Assuming arguendo that there is here some ambiguity to be resolved, that principle cuts against the position of the preliminary executors, since it is undisputed that the Release was drafted by counsel for decedent.

For the foregoing reasons, the court declines to infer from the language of the Release an intent to relinquish Steven's rights as decedent's putative distributee, including his right to object to any will that might be offered for probate. Accordingly, the motion to dismiss Steven's objections is denied. Steven's cross motion for sanctions is also denied, in the court's discretion.

This decision constitutes the order of the court.

_____
SURROGATE

Dated: October 28, 2011

5